IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK06-80006 |
| WBE COMPANY, INC., | ) | |
| A Nebraska Corporation, | ) | CH. 11 |
| | ) | |
| Debtor-in-Possession. | ) | |
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK06-80101 |
| DOLORES LOUISE WIEKHORST, | ) | |
| | ) | CH. 11 |
| Debtor-in-Possession. | ) | |

MEMORANDUM

Trial was held in Omaha, Nebraska, on October 30 and 31, 2007, regarding the debtor's amended Chapter 11 plan (Fil. #383), the debtor's supplement to the amended plan (Fil. #430), and the objections filed by Enterprise Bank, N.A. (Fils. #504 and 505). David Hicks appeared for the debtors, and Mark Shaiken and Andrew Muller appeared for Enterprise Bank. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

These two Chapter 11 cases are being jointly administered. Dolores Wiekhorst is the owner of all of the stock in WBE Company, Inc. ("WBE"), and is the president and director. She has guaranteed the debts of WBE and has pledged some of her personal assets to secure WBE debts to the bank.

The debtors have proposed a plan which provides for interest payments only on the bank's debt for 60 months and then a balloon payment of the total principal balance. The plan is denied confirmation on the following grounds:

1. WBE, through its management, has violated its fiduciary duties to the bank and cannot satisfy 11 U.S.C. § 1129(a)(2) and (a)(3) of the Bankruptcy Code.

2. For confirmation purposes, the assets of the debtor must be valued as a "going concern." WBE and the bank have agreed that if so valued, the assets exceed the debt to the bank, permitting the bank to be awarded reasonable attorney fees and post-petition interest. The plan does not propose to pay enough on a monthly basis to cover interest on the bank's claim at the over-secured amount. In addition, there is no evidence that WBE can finance the balloon payment at the end of five years.

3. It is not feasible.

4. The plan proposes that the debtor may sell collateral of the bank but prohibits the bank from making a credit bid. This provision violates § 363(k) of the Bankruptcy Code.

## FACTS

Prior to the Chapter 11 case being filed, WBE was in the road building business. It was bonded and permitted to bid on public projects. It got into a dispute with the City of Omaha, Nebraska, concerning one or more projects. The city dismissed WBE from those projects and the WBE bonding company stepped in. Not being allowed to complete the projects caused a serious cash flow shortage for WBE. WBE and the bank entered into an agreement whereby WBE would and did sell a significant amount of assets and paid down the debt at the bank by the proceeds of the sale.

After such asset sale the debtor was unable to keep current with the bank and when the bank began to foreclose upon its collateral, all of the assets of the debtor, the debtor filed this Chapter 11 case.

When the bank pursued Dolores Wiekhorst on her guarantees and deed of trust granted in her residence, she filed for Chapter 11.

Early in the case, the bank filed a motion for relief from the automatic stay. After trial, it was determined that, for relief from stay purposes, the liquidation value of the collateral should be used and, based upon a finding that the liquidation value was less than the debt, the bank was under-secured. However, because all of the equipment appeared to be necessary for an effective reorganization, because WBE had a contract which was to generate $250,000, and because it was early in the case and the debtor was able to make minimal adequate protection payments, relief was not granted.

The debtor was able to make minimal adequate protection payments because it had leased part of its assets, a plant used for making concrete, to another company, Maverick Concrete & Piping, L.L.C. ("Maverick").

Thereafter, the debtor purportedly operated as a producer and seller of concrete pipe products, concrete for construction of curbs, sidewalks, driveways, etc., and provided some services to certain customers. However, even though it has been in Chapter 11 since January of 2006, it has never generated more than an average of $4,000 per month net income and did not perform the $250,000 contract.

Scott and Kurt Wiekhorst, sons of Dolores Wiekhorst, are the managers of WBE. They also are employed as managers for Maverick and have created a separate company called Valley Pipe Products, Inc. ("Valley"). All three of these companies sell and deliver concrete. At trial on the confirmation of the plan, Scott Wiekhorst was unable to clearly explain how he determines which company gets a contract. He and/or Kurt make subjective decisions and direct the contract and its account receivable or payment as they deem appropriate without any contractual arrangements or objective criteria in place. In addition, Scott and Kurt receive salary or wages from both Maverick and Valley. Those amounts paid to Scott and Kurt come from the proceeds of the concrete sales by each of those businesses.

WBE has proposed a plan which will pay interest only on the claim of the bank for 60 months and then pay the bank off with a balloon payment. The bank's claim, based on the debtor operating as a going concern and not in liquidation mode, is $4,308,430.84. The interest rate, calculated according to the formula in the Local Rules of the Bankruptcy Court, is 9.5%. Applying

such a rate to the outstanding obligation would generate an interest payment on an annual basis of $409,300.92, or $34,108.41 per month. Although WBE presented a number of documents which Scott Wiekhorst claimed were contracts providing WBE with a significant cash flow in 2008 and thereafter, the total net value of the "contracts" is less than the amount required to pay simple interest on the bank's claim. In addition, most of the documents presented as contracts are not binding on the entity which would allegedly purchase concrete from WBE.

The only evidence presented by WBE in support of its ability to make the annual interest payment and a balloon payment after five years is the testimony of Scott Wiekhorst. His opinion is that because of all of his years of experience in the business, he will be able to generate contracts for the sale of concrete and concrete products and will be able to obtain a bond for WBE or Valley, for the benefit of WBE, and obtain public road project contracts, all of which will enable WBE to make its payments. However, notwithstanding the optimism of Scott Wiekhorst concerning the future, the history of WBE during the bankruptcy process does not support his optimism.

As mentioned above, during the bankruptcy process, the debtor has not obtained significant contracts which would provide sufficient net revenues to pay anywhere near the monthly interest requirements on the bank's claim. Indeed, Scott Wiekhorst, while wearing the hats of general manager of WBE and Valley, and as employee of Maverick, has diverted potential contracts from WBE to Valley and Maverick, thereby causing WBE to lose thousands of dollars in potential revenue. In addition, he has allowed Maverick and Valley to use the equipment of WBE, collateral of the bank, to perform the contracts, with no payment to WBE for the use of the equipment.

In addition to failing to present evidence other than the opinion of Scott Wiekhorst supporting the ability of WBE to make the monthly interest payments, WBE has failed to present any evidence concerning its ability to obtain financing or generate sufficient revenues to enable it to pay a lump-sum payment at the end of 60 months.

WBE has presented no cash flow analysis, has presented nothing concerning the depreciation of its equipment and the cost of maintenance of the equipment or its replacement. It has presented no evidence concerning its ability to pay income or other taxes, and it admits that pre-petition it was unable to make all of its required payments to the taxing authorities, even when it apparently was generating revenue from operations.

WBE has proposed to sell or lease to another party one of its two concrete production plants. Scott Wiekhorst testified that if such a sale or lease occurred, WBE would have the ability to continue to use that concrete plant as needed. However, no proposed contract or lease relating to that issue was presented. When the sale was first proposed, the bank, which has a security interest in the equipment to be sold, offered to credit-bid an amount higher than the sale price. WBE then withdrew the motion requesting authorization to sell the equipment. Scott Wiekhorst testified that he did not want the bank to be able to purchase the plant and sell it to a competitor and that is the reason the plan does not provide for the bank credit-bidding at any sale.

Mr. Wiekhorst's reasoning is strained. It seems only logical that an entity purchasing a concrete plant would be purchasing it for the purpose of producing concrete. If the purchaser is in the general area of WBE's market, that purchaser will be in competition with WBE, whether the plant is purchased from WBE directly or from the bank after a credit bid. In fact, WBE has leased its other plant to Maverick, and it is clear Maverick is in competition with WBE for the sale of concrete.

CONCLUSIONS OF LAW and DISCUSSION

To obtain confirmation of a plan, a Chapter 11 debtor must meet numerous requirements, including the requirements that the proponent of the plan complies with applicable provisions of Title 11 and that the plan has been proposed in good faith.  11 U.S.C. § 1129(a)(2) & (3).

As noted above, Scott and Kurt Wiekhorst have directed work that could have been performed by WBE and which would have generated revenue for WBE to Valley or Maverick.  They, as the operators of WBE and as the general managers, became, upon the filing of the bankruptcy petition, fiduciaries with regard to the obligations to creditors of WBE.  Lange v. Schropp (In re Brook Valley VII Joint Venture), 496 F.3d 892, 900-01 (8th Cir. 2007); In re Hampton Hotel Inv., L.P., 270 B.R. 346, 361 (Bankr. S.D.N.Y. 2001) (citing Wolf v. Weinstein, 372 U.S. 633 (1963)), accord Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985).  As such, Scott Wiekhorst and Kurt Wiekhorst have breached their fiduciary duty to the bankruptcy estate by referring potential WBE business to other entities and personally profiting from such referrals.  No evidence was offered that Valley and Maverick concrete sales and the use of WBE's equipment for free were fair to WBE.  The Nebraska Supreme Court in Trieweiler v. Sears, 689 N.W. 2d 807 (Neb. 2004) has made it clear that persons in the position that Scott Wiekhorst and Kurt Wiekhorst hold in WBE, although not necessarily precluded from entering into separate business relationships with competitors of WBE, must prove that their activities are in good faith and that they do not contribute to the injury or damage of WBE or deprive it of business.  Failing to present such proof causes the courts to find a breach of fiduciary trust.  It was Scott Wiekhorst and Kurt Wiekhorst's obligation to prove that their activities with regard to the diversion of WBE contracts were fair to WBE.

As a result of the breach of the fiduciary duty to the estate, WBE cannot meet its burden under § 1129(a)(3) to prove that the proposed plan is proposed in good faith.  Being unable to do so, it is clear that WBE has not complied with the applicable provisions in Title 11, making the plan in violation of § 1129(a)(2).

It is the debtor's burden to prove that the proposed plan is feasible.  Factors to consider on the issue of feasibility are: (a) adequacy of capital and availability of working capital; (b) earning power of the debtor's business; (c) availability of post-bankruptcy credit, including borrowing capacities; (d) ability to invest in capital improvements; (e) capability of management; (f) management's commitment to continue with the business after confirmation; (g) the significance of any demonstrated change in the debtor's operations; and (h) external factors.  In re M & S Assocs., Ltd., 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992).

At trial, WBE did not present any evidence on the adequacy of capital or the availability of working capital.  Also, WBE did not present any evidence concerning its ability to invest in capital improvements.  Scott and Kurt Wiekhorst both testified concerning their experience in managing the business and operating the business.  However, although they both have many years of experience in the business, during the last two years they have been working mainly for Valley and Maverick and not effectively managing WBE in a profitable manner.  Although they present themselves as being committed to continue with the business after confirmation, the fact is that they have also committed themselves during the past two years and into the near future to the business of Valley and Maverick.

Regarding the earning power of the debtor's business, the evidence presented is

speculative and incomplete. The monthly operating reports did not show that WBE has the ability to produce sufficient net income to pay the monthly interest required, let alone pay any other ordinary operating expenses. The documents presented as contracts for the sale of concrete may well represent opportunities for WBE to actually enter into contracts for various projects, but do not represent jobs for which WBE can count on being paid in the near future.

Although Scott Wiekhorst testified that he had talked with as many as 11 financial institutions in an attempt to obtain operating credit and financing to pay off the bank, he was unsuccessful. WBE has no post-bankruptcy credit and there is no evidence that it has any borrowing capacity at all.

The significance of the demonstrated change in the debtor's operations is that the debtor has basically had no operations since it entered bankruptcy and the debtor has given the court no reason to believe it has the ability to obtain financing, marketing, and project contracts sufficient to operate profitably and pay off the bank. Evidence of the financial ability to operate profitably must not be speculative, conjectural, or unrealistic. In re M & S Assocs., Ltd., 138 B.R. at 849. Evidence of future revenue predictions must be based on objective fact. F.H. Partners, L.P. v. Inv. Co. of the Southwest, Inc. (In re Inv. Co. of the Southwest, Inc.), 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006).

Here, WBE presented a partial pro forma income statement which was prepared at the direction of Scott Wiekhorst using numbers he created. He was unable to explain how much of the revenue would come from public projects, although he assumed WBE would obtain bonding and obtain public contracts in the future. The document had no line item for depreciation or taxes. Scott Wiekhorst testified there would be no taxes during the five-year period because of a loss carry forward. However, he did not support such a statement with any tax returns showing such a loss carry forward or any expert testimony that such a loss carry forward would be usable by the post-confirmation debtor. Furthermore, the document contains no line items for maintenance, payments to unsecured creditors, or purchase of equipment. Finally, risk factors must be considered. This plan depends upon actually being assigned projects by companies that lay concrete in their business, such as homebuilders. Although there is always a risk that a homebuilder will not be paid by the party that contracted with it, and therefore be unable to pay the manufacturer of the concrete, this risk is all too real in the current economic environment. In this district alone, there are several homebuilders in bankruptcy. One of the homebuilders that did testify on the subject of his willingness to purchase concrete from WBE admitted that he had numerous accounts which had not paid his company, thereby causing him to be in his own Chapter 13 bankruptcy.

In addition to depending upon the local housing market, the plan depends upon Valley obtaining bonding and being the successful bidder on public projects. Valley would then sub-contract with WBE. No evidence was presented that Valley could obtain a bond. The evidence on that subject indicated that Valley could not obtain a bond. There was also no evidence presented that even if Valley could obtain a bond, the owner of the public project would be obligated to accept the idea that Valley, which has no equipment or employees other than Scott and Kurt Wiekhorst, should be awarded a contract which it would immediately assign or subcontract to WBE.

Separate from the feasibility issue is that part of the plan which denies the bank the right to credit bid upon a proposed sale of its collateral. Section 1129(b)(2)(A)(ii) of the Bankruptcy Code requires that a cramdown proposing to sell collateral after confirmation must be subject to § 363(k) of the Bankruptcy Code. That section grants a secured creditor the right to credit bid.

For all of the above reasons, the plan is denied confirmation.  A separate order will be filed.

DATED:    December 19, 2007

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
    *David Hicks        Mark Shaiken
    Andrew Muller       United States Trustee

*Movant is responsible for giving notice of this order to other parties if required by rule or statute.