IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK06-80006-TJM |
| ) | A06-8124-TJM |
| WBE COMPANY, INC., ) | |
| ) | CHAPTER 7 |
| Debtor(s). ) | |
| WBE COMPANY, INC., a Nebraska ) | |
| Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CITY OF OMAHA, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Hearing was held in Omaha, Nebraska, on June 21, 2010, regarding the Motion to Compromise Controversy filed by Trustee Richard D. Myers, Filing #1308 in the adversary proceeding and Filing #783 in the bankruptcy case, and Filing #1313, Objection, filed by Dolores Wiekhorst, Scott Wiekhorst, and Kurt Wiekhorst. Theodore Boecker, Jr., appeared for the trustee; Michelle Peters, Robert Hamer and RoseMarie Horvath appeared for the City of Omaha; Christopher Pfanstiel appeared for Dolores Wiekhorst, Scott Wiekhorst, and Kurt Wiekhorst; David Hicks appeared as former counsel for Dolores Wiekhorst and the debtor; Brian Koenig appeared for JMN Construction, LLC; and Richard Myers appeared as trustee. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(a)(2)(A) and (O).

BACKGROUND

WBE Company, Inc. ("WBE"), prior to filing Chapter 11 and during the Chapter 11 case, was a construction company with road building contracts with the City of Omaha and the State of Nebraska, among others. During the construction of one or more projects for the City of Omaha, WBE and the City got into disputes concerning the projects and the City terminated the right of WBE to complete the projects. WBE then filed a Chapter 11 petition.

During the Chapter 11 case and prior to the conversion of the case to Chapter 7, the debtor sued the City of Omaha requesting damages of approximately $20,000,000 for loss of profits from breach of six contracts. After much time spent on discovery, the trustee of the WBE estate and the city entered into an agreement to settle the litigation, subject to bankruptcy court approval.

The trustee filed a motion to approve the compromise with the city, informing the court and all creditors and interested parties that the city had agreed to pay $650,000 to the bankruptcy estate and withdraw its claim against the bankruptcy estate for approximately $325,000.

At least one other lawsuit against other defendants is pending in the state court and is not

the subject of this motion.

No creditors objected. Dolores Wiekhorst, the sole shareholder of WBE, and her two sons, Scott and Kurt Wiekhorst, non-shareholder officers, did file an objection. Their objection (Fil. #1313) asserts that the compromise amount of $650,000 is "drastically inadequate to compensate the interested parties and creditors and compromises the Debtor's interested parties and creditors in the lawsuits which will remain viable and pending." They also claim that the settlement compromises the debtor's position in any claim it may have against an engineering firm and the State of Nebraska because a compromise requires the debtor to disclose the opinion of its expert witness regarding the amount of damages. The objection asserts that "said disclosure is one that violates the principle of Attorney Work Product and furthermore compromises the Debtor's position in its lawsuit against Lamp Rynearson and the State of Nebraska."

At the hearing on the objections, the court received the affidavit of Dolores Wiekhorst in support of her objection. That affidavit is at Filing #1316. She avers in paragraph 1 that she was the operator and one hundred percent owner of WBE Company, Inc., for more than the past 30 years. In paragraph 2 she states that she is objecting due to the trustee's non-consideration of what she asserts are the following facts:

> a. WBE Company was destroyed by the malicious acts of the City of Omaha, and its agents. The settlement does not address these acts for a proper valuation of the related damages.
>
> b. This company was started over 30 years ago after my ex husband left me and my 3 children. We started with nothing, and over the years grew the company into a multimillion dollar organization, with over 70 employees and 100 plus pieces of heavy equipment.
>
> c. Many of our projects were recognized and awarded honors for being built on time and under budget. Projects like the Abbott street bridge over the Union Pacific railroad yard by 6th Street. The Interstate 80 bridge over 60th street
>
> d. We were one of only 6 General contractors to ever work on the Interstate system in the Omaha area. We saved the taxpayers millions of dollars by being the "lowest and best bid" for over 30 years.
>
> e. WBE Company had the earning power of multiple millions of dollars per year, with profits in the hundreds of thousands per year.

3. After the illegal acts of the city and the defamation of my company's character, I had to file personal and corporate bankruptcy.

4. I have lost my home of 40 years, my business of 30 years, my multi million dollars worth of credit, my bondability, and my business reputation.

5. I have numerous and various creditors that will not be paid if this settlement is allowed to go through.

  6. I will not be able to recover my net worth, in fact it has been explained to me, that if this settlement is accepted, I will not receive a penny.

  7. I cannot comprehend how the Trustee took any of this into account when he accepted such a low amount.

  8. For these reasons and many more that will come out at trial, I am requesting this proposed settlement offer to be disallowed by the court.

Kurt Wiekhorst presented an affidavit in support of his objection at Filing #1317. He asserts that he was present at the mediation which resulted in the compromise and states that the trustee did not ask the opinion of the expert witness with regard to the value of the losses sustained by the company. He does not feel the trustee has the background or the experience in the construction industry and its related costs to make a decision of this magnitude, and he does not believe the trustee is considering the viability and the likelihood of success for the plaintiff in the underlying adversary proceeding. It is his position that the bankruptcy case is not the product of management of WBE Company or any fault of the debtor, its employees or shareholders, but that of the defendant whose illegal acts will not be indicated by the proposed settlement.

Scott Wiekhorst submitted an affidavit at Filing #1318. He also took the witness stand and testified under oath. He was the manager of the company for 25 years. He does not believe the business decision to settle took into consideration the opinion of the expert witness with regard to valuation. He says that the proposed settlement is less than the amount the city has already agreed upon with regard to "pay estimate totals." That term refers to approved work and related payment for that work and material which, he claims, the city has, in essence, approved and agreed. He further believes the trustee has not taken into account the opinions of the managing board of the company or witnesses in the case. In addition, he complains that the settlement agreement does not acknowledge the city's wrongdoings which has a direct impact on his ability to obtain bonding and credit and does not address the damage to the reputation of managing members of the company as contractors. He insists that the bankruptcy was caused by the illegal acts of the city which, if the settlement is approved, will never "see the light of day."

## THE ADVERSARY PROCEEDING

The following facts are agreed on – or not disputed – by the parties:

  1. The plaintiff, WBE Company, Inc., was a corporation conducting business in Omaha, Nebraska.

  2. WBE is a construction company that performed road construction and excavation services for public and private entities.

  3. WBE was owned by Dolores Wiekhorst and operated by her sons Scott and Kurt. Scott Wiekhorst managed the company's operations.

  4. The City of Omaha is a municipal corporation in the State of Nebraska, a city of the metropolitan class in the State of Nebraska, and a political subdivision of the State of Nebraska.

  5. WBE undertook construction projects for the city, pursuant to written contracts entered

into in 2002 and 2003, including projects generally known as:

> a. P Street, Q Street and 17th Street in Omaha, Nebraska, OPW50013, with Street Improvement District 6870 (referred to as the "17th Street Project");
>
> b. 42nd Street and Paxton Street in Omaha, Nebraska, RNCL 5700 (referred to as the "Paxton Street Project");
>
> c. 35th Street and Vinton Street and 32nd Street and Hascall Street, in Omaha, Nebraska, RNCL5841 (referred to as the "Vinton Street Project");
>
> d. Fort Street from 108th to 120th Streets in Omaha, Nebraska, SP93-13 (referred to as the "Fort Street Project");
>
> e. Omaha Convention Center and Gallup Public Streets, SP00-08S (referred to as the "Gallup Project"); and
>
> f. 132nd Street between West Dodge Road and Blondo Street in Omaha, Nebraska, SP97-14 (referred to as the 132nd Street Project") (all collectively referred to hereinafter as the "City Construction Projects").

6. Lamp, Rynearson & Associates, Inc. ("LRA") was retained by written contract by the city as engineer and project manager on the Gallup Project.

7. Metropolitan Utilities District ("MUD") and Omaha Public Power District ("OPPD") entered onto the WBE projects and conducted utility work.

8. In the Gallup Project, contract line items were removed.

9. The City of Omaha required WBE to leave the 132nd Street Project in October 2004.

10. The City of Omaha filed an amended proof of claim for $325,912.10 in WBE's bankruptcy proceeding.

11. WBE's bonding company, Liberty Mutual, made a payment to the city in the amount of $525,000.00 for claims related to the WBE projects.

12. WBE filed a claim with the comptroller of the City of Omaha on or about October 19, 2005, and filed a tort claim with the city clerk on or about January 31, 2005. Both were denied.

13. Among the claims for relief in WBE's amended complaint is the allegation that the city's actions caused WBE to lose other business and prevented the company from realizing profits on other contracts "lost as a consequence of the interference with their business relationships and the interruption of its cash flow." Am. Compl. ¶ 52 (Fil. #13).

### STANDING TO OBJECT

Standing to object to a motion to compromise is limited to persons with a financial stake in the bankruptcy court's order. Yates v. Forker (In re Patriot Co.), 303 B.R. 811, 815 (B.A.P. 8th Cir. 2004). In order for a stockholder to have such standing, the stockholder must "establish a real possibility that a successful objection to the motion to compromise would have resulted in a surplus." Id. Moreover, "[t]he trustee's responsibility is to preserve and maximize the value of the estate for the benefit of the parties in interest, and not to safeguard the interest of the debtor's principals." Williams v. Stefan (In re L & S Indus., Inc.), 122 B.R. 987, 993-94 (Bankr. N.D. Ill. 1991). A bankruptcy trustee represents the interests of the debtor's estate and its creditors; he or she does not represent the interests of the debtor's principals beyond their interest as creditors. New Concept Housing, Inc. v. Poindexter (In re New Concept Housing, Inc.), 951 F.2d 932, 938 (8th Cir. 1991) (quoting L & S Indus., 122 B.R. at 993)).

## STANDARD FOR EVALUATING SETTLEMENT

The standard for evaluation of a settlement is whether the settlement is fair and equitable and in the best interests of the bankruptcy estate. Tri-State Fin'l, LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008); Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re SportStuff, Inc.), ___ B.R. ___, 2010 WL 2196258, at *1 (B.A.P. 8th Cir. June 3, 2010). Compromise is an art, not a science. Nangle v. Surratt-States (In re Nangle), 288 B.R. 213, 220 (B.A.P. 8th Cir. 2003). There is no "best compromise," only a range of reasonable compromises, and as long as the compromise before the court falls within that range, it may be approved. Velde v. First Int'l Bank & Trust (In re Y-Knot Constr., Inc.), 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007). In determining whether a settlement is fair, reasonable, and adequate, the court must consider all factors bearing on the fairness of the settlement, including the probability of success in the litigation; the difficulties, if any, to be encountered in collection; the complexity of the litigation involved and the expense, inconvenience, and delay associated with it; and the paramount interest of the creditors and a proper deference to their reasonable views. Tri-State Fin'l, supra; Drexel Burnham Lambert, Inc., v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.), 730 F.2d 1128, 1135 (8th Cir. 1984) (quoting Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929)).

## DISCUSSION AND DECISION

Although Dolores Wiekhorst objected to the proposed compromise, it is not clear that she has standing to do so. Dolores Wiekhorst is the sole shareholder of WBE. So, assuming the litigation were to be successful with regard to some or all of the contracts in dispute and the amount of damages in dispute, it is possible that there would be a surplus payment to Dolores Wiekhorst after paying all of the litigation costs, costs of administration of the Chapter 7 estate, and payment of all the unsecured claims. Those claims amount to several million dollars. Under that scenario, Dolores Wiekhorst does have standing because she has a financial interest at stake. On the other hand, in the Yates v. Forker case referred to above, the Bankruptcy Appellate Panel for the Eighth Circuit made it clear that, to have such standing the stockholder must establish a real possibility that upon the successful objection, the litigation would have resulted in a surplus. She has presented only her hope for successful completion of the litigation and her concerns that the city has done her wrong. The only real financial interests that Scott Wiekhorst and Kurt Wiekhorst have in the litigation is the fact that they have agreed with the trustee to help in the litigation in consideration for compensation in the form of a specified percentage of the distribution of the proceeds, if any, after deduction for costs of litigation and some administrative expenses.

Even though their standing to object seems tenuous, I have reviewed their objection, their

affidavit evidence, and the testimony of Scott Wiekhorst. As described in detail in an earlier portion of this opinion, their objection really deals with the impact of the bankruptcy case itself, and the proposed compromise, on their lives and reputations, and less on the financial impact. None of the Wiekhorsts are creditors of the estate. None of the creditors of the estate objected to the proposed compromise. The trustee represents the interests of the estate and its creditors, not the debtor's principals.

In an attempt to determine whether the settlement is fair and equitable and in the best interest of the bankruptcy estate, I have considered each of the factors listed by the Eighth Circuit Court of Appeals in Tri-State Fin'l, supra, and Drexel Burnham Lambert, Inc. v. Flight Transp. Corp., supra.

First, concerning the probability of success in the litigation, special counsel for the trustee, in arguing in support of the trustee's decision to accept the offer of the city incorporated in the compromise, informed the court that he had considered the risks in the litigation, including the defenses the city had raised to the claims of lost profits on future contracts. The city had questioned the foundational basis for the expert witness testimony concerning that matter. The city had also proposed a defense concerning the speculative nature of future contracts. That subject had been considered by this judge in separate litigation that WBE as debtor in possession brought against its main lender, Enterprise Bank. In that litigation, using some of the same analyses of the expert witness that would be presented in this litigation, the possibility of obtaining future contracts was determined to be speculative and the profitability of such contracts was also deemed to be speculative. Further, the bonding company took over after the city terminated at least one of the contracts and eventually paid the city more than $500,000 for damages incurred by the city. It entered into releases which arguably may have released the city from liability to WBE with regard to particular contracts. Finally, the city had made claims incorporated into a counterclaim for certain offsets against any damages which may have been awarded to WBE for damages the city incurred as a result of defective work.

This compromise was agreed upon during a voluntary mediation session. At that session, the trustee, special litigation counsel for the trustee, Scott and Kurt Wiekhorst, and the expert witness employed by WBE were present. The trustee informed the court at the hearing that he discussed with his special litigation counsel and with the expert witness, out of the hearing of Scott and Kurt Wiekhorst, and separate from one another, their best estimates as to the likelihood of success and the range of damage awards that they considered possible if the litigation was successful. He informed the court that both special litigation counsel and the expert witness, separately, gave him their advice and that the total amount of the settlement in cash, $650,000, and the withdrawal of the offset claims, $325,000, is in excess of the mid-range of their advice.

Concerning complexity, as it bears on the probability of success, I note that this adversary proceeding is actually a consolidation of six potential lawsuits regarding six separate construction contracts, each with its own facts viewed from either the point of view of the plaintiff or the defendant. In preparation for trial, the city had submitted 1,143 exhibits at the time the compromise was entered into. Had the compromise not been entered into, the city would have continued to file several hundred more exhibits. The bankruptcy estate had not yet begun to file exhibits when the compromise was entered into. The pretrial statement listed numerous fact witnesses as well as expert witnesses. The case was scheduled to be tried for at least two weeks.

If the litigation were to be successful and damages awarded to the bankruptcy estate, there

would be very little difficulty in collection, if the estate was also successful in the various appeals which would normally follow a decision on litigation such as this and the high amount of damages that is in contention.

The case law informs that a significant element bearing on the fairness of the settlement is the paramount interest of the creditors. All of the creditors received notice of the proposed compromise and the opportunity to object. No creditor objected. No creditor appeared at the hearing.

Based upon the complexity of the litigation, the risk to success, as perceived by the trustee and special litigation counsel, and the fact that no creditors with a direct financial interest in this estate objected to the compromise, the motion to compromise is approved.

Separate order will be entered.

DATED:    July 20, 2010

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    Theodore Boecker, Jr.
    Michelle Peters
    Robert Hamer
    RoseMarie Horvath
    Christopher Pfanstiel
    David Hicks
    *Richard Myers
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.